**UNITED STATES of America**

v.

**Susan Anne SEIFERT**

**No. 04–CR–113 JMR.**

United States District Court, D. Minnesota.

Jan. 7, 2005.

Robert M. Lewis, U.S. Attorney, Minneapolis, MN, for Plaintiff.

Kevin Charles Cornwell, Stauber & Lien, Duluth, MN, for Defendant.

ORDER

ROSENBAUM, Chief Judge.

Defendant is charged with arson of a building in violation of 18 U.S.C. § 844(i). Defendant objects to the government's proposed Exhibit 11, a digitally-enhanced surveillance videotape, as not the best evidence and untrustworthy.

An evidentiary hearing was held on December 14, 2004, prior to the commencement of trial. At that time, the Court overruled the objection to the proffered exhibit, reserving the right to issue a written order on the subject. That Order follows.

I. *Background*

A fire of suspicious origin consumed the Cenex Co–Operative Building located in Hawley, Minnesota, during the night of December 28–29, 1999. The building was

equipped with four videotape surveillance cameras. Fire investigators recovered the surveillance videotape from the burned building. Neither the chain of custody nor the original tape's accuracy and admissibility is challenged.

Defendant, however, challenges the government's subsequent treatment and enhancement of the original tape. The original analog tape was digitally copied and contrast-enhanced.[1] Jack Hunter, a video enhancement specialist previously employed by the Bureau of Alcohol, Tobacco and Firearms, testified that he digitally converted and enhanced the surveillance tape. His training, experience, and qualifications were not challenged.

The surveillance system simultaneously recorded images from the four security cameras which covered different areas of the building. Defendant objected to enhancements to footage from one of the four cameras showing a person moving through the building shortly before smoke began to obscure the scene.

■ The technician recounted the steps used to enhance the challenged image.[2] Mr. Hunter testified that he (1) copied the original analog videotape to digital format; (2) corrected the images to real time; and (3) edited the tape to show only the images of interest. There is no objection to these three steps. Defendant objects to the technician's next steps, where he circled the selected image, enlarged it to fill the screen, and adjusted the brightness and contrast to highlight the walking figure. Defendant claims these adjustments render the tape untrustworthy and inadmissible.

## II. Analysis

The Court begins its inquiry by reviewing Rule 1001(3) of the Federal Rules of Evidence ("Fed.R.Evid.") which states:

An 'original' of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. An 'original' of a photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.'

Fed.R.Evid. 1001(3). The original of a writing, recording, or photograph must be used to prove its contents. Fed.R.Evid. 1002. A duplicate—defined as a "mechanical or electronic rerecording ... which accurately reproduces the original," *see* Fed.R.Evid. 1001(4)—is admissible to the same extent as an original, unless (1) a genuine question is raised as to the authenticity of the original, or (2) under the circumstances, it would be unfair to admit the duplicate in lieu of the original. Fed. R.Evid. 1003.

---

1. The original videotape system ("native" format) records in time-lapse fashion. When played at regular speed, the native images appear to move quickly. The digitized copy was computer-adjusted to show motion at normal speed. Defendant raised no objection to this adjustment.

2. The witness testified that he made the enhancements using a commercially-available software program. He said a newer program not only performs these functions, but also records the keystrokes used to do so. Had the newer software been used, another person could attempt to replicate the work, which would allow more acute analysis of any purported technical flaws in the enhanced images. The Court does not find that the use of the older software taints the enhanced images or bars admission of the enhanced tape. The Court does, however, suggest—by way of dicta—that technology which provides a digital trail could provide an even stronger forensic basis for admission of enhanced electronic evidence.

Defendant claims the enhanced video no longer accurately records the surveillance images, and, as such, is no longer an admissible original recording. The Court does not agree, and finds the proffered tape may be admitted.

The government has carried its burden and laid adequate foundation showing the enhanced tape "accurately reproduce[s] the scenes that took place, [and is] ... accurate, authentic and trustworthy." *United States v. Beeler*, 62 F.Supp.2d 136, 148–49 (D.Maine 1999). During the evidentiary hearing, the Court viewed the "before" and "after" images. The Court finds the enhanced version to be a fair and accurate depiction of the original videotaped image. The enhancements more readily reveal, but remain true to, the recorded events. As such, they may be entered into evidence before the jury.

■ The first image transfer—from analog to digital format—changes the image only in a metaphysical sense. The viewer's perceived image is identical. This transition has no effect on the accuracy of the image. In the Court's view, it is an "equivalent [duplication] technique[ ] which accurately reproduces the original." Fed. R.Evid. 1001(4).

Beyond this, the Court finds that adjustments to brightness or contrast, or enlargement of the image, while arguably a manipulation, are in fact no more manipulative than the recording process itself. The image is black and white; the world is not. In the non-digital world, a camera's lens, its aperture, shutter speed, length of exposure, film grain, and development process—all affect the image. Each of these is entirely unremarkable so long as the "image" remains an accurate recording of that which occurred before the camera. If a photographic negative were magnified by lens, and an enlarged image resulted, no one would question the larger picture.

Similarly, in the event of a tape recording, no one would comment if the volume were increased to make a recorded conversation more easily heard—again, so long as the volume-increased words were accurately recorded by the recording medium.

Here, the evidence showed that the technician adjusted the digital image's brightness and contrast, but maintained the relationships between the light and dark areas of the image. As an example, if the moving figure's clothing were a certain percentage lighter or darker than the wall behind it, that light/dark relationship was maintained. The technician testified that he simply "moved" the brightness relationship on the scale, increasing the light's intensity while maintaining the image's integrity.

As a result, the Court finds that the enhanced tape accurately presents a true and accurate replica of the image recorded by the Co–Operative's security camera. It does so in a fashion which maintains the image while assisting the jury in perceiving and understanding the recorded event. *Compare Beeler*, 62 F.Supp.2d at 149 (admitting videotapes where enhancements omitted "extraneous frames" and "the images are larger, clearer and easier to view"); *United States v. Luma*, 240 F.Supp.2d 358, 368 (D.Vi.2002) (admitting videotapes where enhancements "did not change the substance of the videotape, but merely clarified the tapes.")

Accordingly, the Court finds the enhanced videotape is a duplicate admissible under the best evidence rule. Fed.R.Evid. 1001(4), 1002, and 1003.

### III. *Conclusion*

For the foregoing reasons, defendant's motion to exclude the enhanced videotape

is denied. The tape, government's Exhibit 11, is admitted into evidence.

IT IS SO ORDERED.